IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

LANCE TUCKER,

Petitioner,

vs.

JAMES NICHOLS, Superintendent, Mid-
Orange Correctional Facility,

Respondent.

No. 9:07-cv-01111-JKS

ORDER DISMISSING PETITION

Lance Tucker, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus Relief

Under § 2254.  Tucker is currently in the custody of the New York State Department of

Correctional Services, incarcerated at the Mid-Orange Correctional Facility.  Respondent has

answered, and Tucker has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In April 1983, following a jury trial, Tucker was convicted in the Albany County Court of

one count of Murder in the Second Degree (N.Y. Penal Law § 125.25[3]).  The trial court

sentenced Tucker, as a juvenile offender, to an indeterminate prison term of nine years to life.

Tucker timely appealed his conviction and sentence to the Appellate Division, Third Department,

which affirmed his conviction and sentence, and the New York Court of Appeals denied leave to

appeal on February 13, 1986.[1]  The factual basis of the crime of which Tucker was convicted is

---

[1] *People v. Tucker*, 495 N.Y.S.2d 244 (N.Y.A.D. 1985), *lv. denied*, 491 N.E.2d 296 (N.Y. 1986) (Table).

well known to the parties.  As those facts are not relevant to the issues presented in the Petition

before this Court, they are not repeated here.

On December 12, 2003, Tucker, appearing *pro se*, filed a motion in the Albany County

Court to vacate the judgment of conviction pursuant to N.Y. Criminal Procedure Law § 440.10

("CPL § 440.10 motion").  In his motion, Tucker claimed that: (1) based on newly discovered

evidence, the affidavits of two recanting witnesses, he was entitled to a new trial; (2) the

prosecutor failed to disclose *Brady* material;[2] (3) the use of perjured testimony violated his right

to a fair trial; and (4) he is actually innocent.  The Albany County Court, after holding an

evidentiary hearing, denied Tucker's motion in an unreported, reasoned decision.  The Appellate

Division, Third Department, granted Tucker leave to appeal, affirmed the Albany County Court

in a reported, reasoned decision on May 10, 2007, and the New York Court of Appeals denied

leave to appeal on August 17, 2007.[3]  Tucker filed his Petition in this Court on October 17, 2007.

## II.  GROUNDS RAISED/DEFENSES

In his Petition to this Court, although set forth as eight separate grounds, Tucker raises

but three grounds: (1) he is entitled to a new trial based on newly discovered evidence, i.e., the

recantation of the testimony of two witnesses—Talmadge Lacy and Curtis Williams; (2) *Brady*

violations because the prosecutor failed to (a) disclose favorable treatment provided to Williams,

in exchange for testimony, (b) disclose a second statement made by Williams, and (c) disclose

Williams's polygraph results; and (3) prosecutorial misconduct by failing to correct the false

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1962).  A short-hand reference to the failure of the prosecution to disclose evidence favorable to the defense.

[3] *People v. Tucker*, 834 N.Y.S.2d 590 (N.Y.A.D.), *lv. denied*, 874 N.E.2d 761 (N.Y. 2007) (Table).

testimony of Williams.  Tucker also contends that there is a reasonable likelihood that non-disclosure of *Brady* material affected the outcome of the trial and supports his claim of actual innocence.  Respondent contends that the Petition is untimely, and, except for his prosecutorial misconduct claim, Tucker has failed to exhaust his available state-court remedies.  Respondent asserts no other affirmative defense.[4]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

---

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]   When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be objectively unreasonable, not just incorrect or erroneous.[9]   The Supreme Court has made it

clear that the objectively unreasonable standard is a substantially higher threshold than simply

believing that the state court determination was incorrect.[10]   "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]   In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state-court criminal proceeding is whether the error had a

substantial and injurious effect or influence in determining the outcome.[12]   Tucker "bears the

burden of proving by a preponderance of the evidence that his constitutional rights have been

violated."[13]

---

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[12] *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

In applying this standard, this Court reviews the last reasoned decision by the state court.[14]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15]  Although pre-AEDPA precedent established that deference is due findings of state appellate courts,[16] the Second Circuit has left the question open with respect to AEDPA cases.[17]  In the absence of clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, *i.e.*, findings of a state appellate court are presumed to be correct.

## IV.  DEFENSES

Respondent has asserted two affirmative defenses: (1) timeliness; and (2) exhaustion as to all but one of Tucker's claims.  Tucker's claims are subject to dismissal if they are either untimely,[18] or unexhausted.[19]

**A.      Timeliness**

The New York Court of Appeals denied Tucker's application for leave to appeal his conviction on February 13, 1986.  Tucker's conviction became final on direct review 90 days

---

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *See Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[17] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

[18] 28 U.S.C. § 2244(d)(1); *see Day v. McDonough*, 547 U.S. 198, 201 (2006).

[19] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

later, May 14, 1986, when his time to file a petition for *certiorari* in the Supreme Court

expired.[20]

28 U.S.C. § 2244 provides:

(d) (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Because Tucker's conviction became final prior to the enactment of AEDPA, at the

earliest his one-year limitation period started to run was the effective date of AEDPA, April 24,

1996.[21]  Tucker then had until April 24, 1997, within which to file a petition for federal habeas

relief, unless some portion of the one-year grace period was subject to tolling.[22]  Tucker does not

contend that any part of the one-year grace period was tolled.  Accordingly, Tucker's Petition is

not timely under § 2244(d)(1)(A).  Tucker does not contend that any state-imposed impediment

prevented him from filing his federal habeas petition.  Nor does Tucker raise any newly

recognized constitutional right.  Consequently, neither § 2244(d)(1)(B) or (C) are factually

---

[20] *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

[21] *See Ross v. Artuz*, 150 F.3d 97, 102-03 (2d Cir. 1998).

[22] *Diaz v. Kelly*, 515 F.3d 149, 151 (2d Cir. 2008).

applicable in this case.  Therefore, to be timely, Tucker's Petition must fall within the scope of § 2244(d)(1)(D).

Timeliness in this case is a two-step process.  First, this Court must apply the discovery rule of § 2244(d)(1)(D).  This must be determined on a claim-by-claim basis,[23] a fact specific issue.[24]  That is:  the one-year limitation period started running as to *each claim* when, through the exercise of due diligence, Tucker could have discovered the factual predicate for *that claim*.  If the date that Tucker filed his Petition in this Court is more than one year after he could have discovered the claim by the exercise of due diligence, or April 24, 1997, whichever is later, absent statutory tolling, his claims are untimely and are barred.  In this case, because Tucker sought post-conviction collateral relief in the state courts, the Court must apply § 2244(d)(2), excluding the time during which a properly filed state post-conviction proceeding was pending.[25]  If, after the application of § 2244(d)(2), the date that Tucker filed his Petition in this Court is not more than one year after the date he could have discovered the claim by the exercise of due diligence, or April 24, 1997, whichever is later, the Petition is timely as to that *claim*; otherwise it is untimely.[26]

---

[23] *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005).

[24] *See Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000).

[25] Tucker makes no claim that he is entitled to equitable tolling and the circumstances of this case do not appear to provide any basis for the application of the doctrine of equitable tolling.

[26] For example, if by the exercise of reasonable diligence Tucker could not have discovered the factual predicate for his claims until after April 24, 1996, he had one year from the date he could have discovered the factual predicate for his claims.  On the other hand, if Tucker could have discovered the factual predicate for his claim prior to April 24, 1996, he had until April 24, 1997, within which to seek federal habeas relief.

The parties, while agreeing that § 2244(d)(1)(D) controls the starting point, have articulated various arguments directed towards when the one-year limitation period began to run.[27]  Respondent, citing the fact that between December 1993 through May 1994 Tucker and Williams were incarcerated in the same prison and had contact, and sometime around April 2000 to some unspecified date in 2001 Tucker was incarcerated in the same prison and had contact with Lacy, contends that the one-year period began to run at the latest in 2001.

Tucker on the other hand contends that his one-year period did not begin to run until March 11, 2003, when he received the signed affidavits of Lacy and Williams.[28]  If Tucker's "start date" is accepted, excluding the entire time his CPL § 440.10 motion was pending, would give Tucker until November 14, 2007, to file his petition in this Court, making the filing timely.[29]

Because Tucker has the burden of proof on the issue of timeliness, the Court will address the question by addressing Tucker's contentions.  The first issue this Court must determine is whether the time between the date the Appellate Division affirmed the denial of Tucker's CPL § 440.10 motion, May 10, 2007, and the date the New York Court of Appeals denied leave to appeal on August 17, 2007, is excluded under § 2244(d)(2).[30]  If that time is not excluded, even if

---

[27] The parties have not provided an analysis on a claim-by-claim basis.

[28] Tucker argues as an alternative, that discovery of the factual predicate for his claims did not occur until February 22, 2005, when he received certain documents from the Office of the District Attorney.  Because this date is some 15 months after he filed his CPL § 440.10 motion, it can hardly constitute a date upon which he discovered the factual predicate to the claims he now makes.

[29] At the time Tucker filed his CPL § 440.10 motion, 276 of his 365 days had lapsed, leaving Tucker 89 days within which to file for federal habeas corpus relief.

[30] Although neither party has briefed this issue, this Court nonetheless addresses it.  *See Day*, 547 U.S. at 209-11.

the starting date contended by Tucker is correct, Tucker's time to file his Petition in this Court

expired September 17, 2007, 89 days after May 10, 2007.  In that case, Tucker's Petition is

untimely as to all claims.  Normally, under New York law, appellate review of the denial of a

CPL § 440.10 motion ends at the Appellate Division in those cases where the appellate division

exercises its discretion to deny leave to appeal.[31]  In this case, however, Tucker sought review by

the New York Court of Appeals solely on the basis that the Appellate Division had committed an

error of law.  Thus, Tucker's application for leave to appeal was authorized under New York

law,[32] and the time his application for leave to appeal to the New York Court of Appeals was

pending is properly excluded under § 2244(d)(2).

Contrary to Tucker's position, the date he received the signed statements, i.e., the

"evidence" supporting his position, is not the triggering date.  The triggering date is "the date on

which the factual predicate of the claim or claims presented could have been discovered through

---

[31] *Friedman v. Rehal*, 618 F.3d 142, 152 n.3 (2d Cir. 2010) (holding that time is tolled only when further appellate review is authorized by state law); N.Y. Crim. Proc. Law §§ 450.15[1], 450.90[1]; *People v. Crimmins*, 343 N.E.2d 719, 721 (N.Y. 1975).

[32] *See* N.Y. Crim. Proc. Law § 450.90[1]; *Crimmins*, 343 N.E.2d at 725.

the exercise of due diligence."[33]  The proper test is the date by which a duly diligent person in

Tucker's circumstances would have discovered the predicate factual basis underlying his claim.[34]

> After that date, [Tucker] was entitled to further delay (whether in actually making the discovery, or in acting on previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which discovery would have been made in the exercise of due diligence.[35]

AEDPA does not require the maximum feasible diligence, only "due," or reasonable diligence.[36]

Tucker bears the burden for demonstrating due diligence.[37]  Tucker contends in his Traverse that

he has been exercising due diligence since the date of his conviction in 1983.  Although Tucker

does not recite the actions that constitute "due diligence" in either his Petition or his Traverse,

---

[33] 28 U.S.C. § 2244(d)(1)(D).  Although the Second Circuit has not directly addressed this issue, other circuits have adopted this approach.  *See, e.g., Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998) (holding that § 2244(d)(1)(D) does not convey an extended delay while a habeas petitioner gathers every possible scrap of evidence that might support a claim); *Earl v. Fabian*, 556 F.3d 717, 726 (7th Cir. 2009) (citing *Flanagan*); *Brown v. Sec'y for Dep't. of Corr.*, 530 F.3d 1335, 2338 (11th Cir. 2008) (same); *McAleese v. Brennan*, 483 F.3d 206, 215-16 (3d Cir. 2007) (same); *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003) (same); *see also McCleskey v. Zant*, 499 U.S. 467, 498 (1991) ("the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim . . . and pursue the matter through the habeas process); *cf. Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2000) ("[t]hat Albanese did not actually sign an affidavit until 1997 does not mean that the evidence was only newly discovered in 1997.").

[34] *See Wims*, 225 F.3d at 190 (construing the identical provision in 28 U.S.C. § 2255(f)(4)).

[35] *Id.*

[36] *Id.* at 190 n.4.

[37] *See, e.g., Johnson v. United States,* 544 U.S. 295, 311 (2005) (indicating that, where the factual predicate for habeas claim was in existence for some time, petitioner had an obligation to explain why he did not take action to discover predicate earlier).

Tucker did lay out a chronology in his CPL § 440.10 motion,[38] which he incorporates by reference in his Petition.

June 22, 1985 – Initial letter sent to the Office of the Albany County Clerk requesting his criminal records in each of those months.

July 12, 1998 – Follow-up (second) letter to Office of the Albany County Clerk's office.

May 24, 1999 thru October 9, 2000 – Various communications by letter between Tucker and the Albany County District Attorney's Office, Tucker's trial counsel, and the Albany City Clerk concerning the records of Tucker's trial.

April 23, 2002 – Tucker, through his mother, obtained the services of a private investigator ("PI") to locate and interview the prosecution's principal witnesses: Mildred Williams, Curtis Williams, and Talmadge Lacy.

October 15, 2002 – The PI met with Talmadge Lacy and obtained a statement from him.

October 22, 2002 – The PI informed Tucker by letter of the interview with Lacy but did not furnish Tucker a copy.

November 26, 2002 – The PI interviewed and obtained a statement from Curtis Williams.

December 11, 2002 – The PI informed Tucker by letter of the interview with Williams, but did not furnish Tucker with a copy.

January 6, 2002 – PI informed Tucker by letter that the statements of Lacy and Williams were being forwarded to Tucker's mother.

_____

[38] Docket 12-5.

March 11, 2003 – Tucker received the Lacy and Williams statements.[39]

The record also reflects that Williams testified at the CPL § 440.10 evidentiary hearing

that he and Tucker were in prison together at the Greene Correctional Facility between December

1993 and May 1994.  On cross-examination, Williams testified:

> Q.      Did you have any conversation with [Tucker] at that time about,
> jeez, Lance, I really sorry I lied at trial, I'm sorry you're in prison because of me?
> A.      Somewhat, yes.
> Q.      Why don't you tell us about that question, sir.
> A.      It wasn't really -- it was really that I told him that I felt that I was
> manipulated into testifying against him and I wasn't trying to go to prison.
> Basically that is what I told him.[40]

At the CPL § 440.10 evidentiary hearing, Talmadge Lacey testified that he and Tucker

were incarcerated at the Washington Correctional Center sometime in 1997, 1998, or 2000.  On

cross-examination, Lacey testified:

> Q.      Did you talk to [Tucker] about the trial and your testimony at the
> trial?
> A.      I spoke to him about certain aspects of it.  I spoke to him.  He
> would come and I would talk and he would say, Tom, you know, it's been a long
> time.  I says, yeah.  He says, Tom, I been sitting here all this time for a crime I
> didn't commit.  I said, I sincerely believe you.  I don't believe you did it.  That's
> just my opinion.  Now, am I an authority on anything?  No.  And he said, you
> know I didn't do it.  And I says, well you know, Lance, hey, what do you want me
> to do?  What can I do?  Nothing I can do, you know what I mean?  And that's
> basically about the gist of the conversations.  I used to talk to him, yeah I talked to
> him.
> Q.      Did he ask you to give a sworn statement for him back there?
> A.      Did he ask me for a sworn statement for him?  He asked would I
> pull out an affidavit.  I said sure.[41]

---

[39] Docket No. 12-5, pp. 14-21.

[40] Docket No. 12-22, p. 51.

[41] Docket No. 12-22, pp. 106-07.

With the exception of his claim that Talmadge Lacy recanted his trial testimony,[42] Tucker's claims all relate to matters concerning Curtis Williams's testimony.  What Tucker does not address are three significant time periods in his chronological recitation of his efforts to obtain information in which there does not appear to be any activity:  (1) the nearly eight-and-one-half-year period between June 22, 1985, and December 1993, the date on which he might have first conversed with Williams;  (2) the more than four-year period between May 1994, the latest date Williams advised Tucker that he felt he had been manipulated into testifying, and July 12, 1998, when Tucker sent his second letter to the Albany County Clerk requesting a copy of the records; and (3) the 15-month lapse between his last communication seeking records in October 2000 and the retention of the private investigator in April 2002.

Assuming, without deciding, that Tucker exercised due diligence through either June 1985 or May 1994, his last day to seek federal habeas corpus relief would have been at the expiration of the one-year grace period, April 24, 1997.  Assuming, without deciding, that Tucker exercised due diligence through October 9, 2000, his one-year limitation period expired October 9, 2001.  Each of these dates preceded the October 17, 2007, date Tucker filed his Petition for relief in this Court.

---

[42] This Court finds that the claim that Lacey recanted his trial testimony to be totally unsupported by the evidence.  Lacey's testimony at the evidentiary hearing on the CPL § 440.10 motion clearly indicated that he had no recollection of either his testimony or what he had or had not been told by Tucker.  Docket No. 12-22, pp. 103-04.  In short, Lacey could neither verify nor disavow the truthfulness of the testimony he gave at Tucker's trial.  The Court also notes that Tucker does not refute the testimony of Lacy that, at sometime in 2000, Lacy agreed to give Tucker an affidavit.  Thus, insofar as any claim related to Lacy is concerned, the one-year limitation period lapsed at the end of 2001 at the latest.

Turning to Tucker's activities after April 24, 1996, the effective date of AEDPA, disregarding the 15-month delay in obtaining the services of the PI in April 2002 and assuming that Tucker acted with due diligence thereafter, Tucker's Petition is still untimely.  Although Tucker did not receive Williams's signed affidavit until March 11, 2003, Tucker was informed of the results of the PI's interview on December 11, 2002.  This is the latest date that Tucker could have learned of the factual predicate for his claims through the exercise of due diligence.  At that point, Tucker had until December 11, 2003, within which to file a petition for federal habeas relief.

Tucker filed his CPL § 440.10 motion on December 11, 2003, at which time his entire one-year limitation period had lapsed.  Tucker's excluded period under § 2244(d)(2) ended when the New York Court of Appeals denied leave to appeal, August 17, 2007, and the clock restarted the next day.  Assuming that Tucker was entitled to the three-day mail rule of Federal Rule of Civil Procedure 6, Tucker's time to file a petition for federal habeas relief lapsed on August 20, 2007.  Tucker did not file his Petition for relief in this Court until October 17, 2007, 58 days late.

**B.      Actual Innocence**

This Court must consider Tucker's claim that he is actually innocent in both the context of overcoming the procedural bar of untimeliness and as a free-standing claim.  To the extent that Tucker is attempting to raise a free-standing claim of actual innocence, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state

criminal proceeding."[43]  "'[*T*]*he existence merely of newly discovered evidence relevant to the*

*guilt of a state prisoner is not a ground for relief on federal habeas corpus*.'"[44]

The Appellate Division, in affirming denial of Tucker's CPL § 440.10 motion, rejected

Williams's contention that the recantations constituted newly discovered evidence holding:

> With respect to whether recantation testimony will constitute newly
> discovered evidence, we note that "a presumption of regularity attaches to judicial
> proceedings and the burden is upon [the] defendant to overcome such
> presumption by substantial evidence."  Moreover, recantation testimony has been
> deemed an extremely unreliable form of evidence.  Consequently,
>> "[c]onsideration of recantation evidence involves the following
>> factors:  (1) the inherent believability of the substance of the
>> recanting testimony; (2) the witness's demeanor both at trial and at
>> the evidentiary hearing; (3) the existence of evidence corroborating
>> the trial testimony; (4) the reasons offered for both the trial
>> testimony and the recantation; *5) the importance of facts
>> established at trial as reconfirmed in the recantation; and (6) the
>> relationship between the witness and [the] defendant as related to
>> the motive to lie."
>> We conclude that County Court correctly applied the applicable portions
> of these rules in finding neither witness's recantation to be either credible or
> newly discovered evidence.  Notably, on this appeal, defendant has confined his
> arguments solely to one of these witnesses, Curtis Williams, who claimed at the
> CPL article 440 hearing that his trial testimony denying the existence of a
> cooperation agreement with the prosecution was false.  Although this record
> contains some evidence suggesting that a promise of no jail time was made for a
> then pending burglary charge if he testified against defendant, Williams was
> sentenced to one year in jail well in advance of defendant's trial and made no
> mention of this guaranty during his testimony.  Interestingly, at the CPL article
> 440 hearing, Williams reconfirmed his trial testimony that defendant had admitted
> to committing a burglary, but not to murdering the victim.  Even were we to
> assume the truthfulness of his testimony in this proceeding, we would still agree
> that it does not constitute newly discovered evidence.  Given the clear evidence of
> defendant's guilt provided by, among other things, the testimony of his girlfriend,
> there is no reasonable possibility that this evidence would change the result if a

---

[43] *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

[44] *Id*. (emphasis in the original) (quoting *Townsend v. Sain*., 372 U.S. 293, 317 (1963)).

new trial were granted.  Moreover, as Williams' recantation testimony had mere impeachment value, it does not constitute newly discovered evidence.[45]

While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review,[46] the Supreme Court has never held that a freestanding claim of innocence is cognizable in a § 2254 petition filed by a non-capital defendant.[47] *House* declined to answer the question left open in *Herrera*, noting that because "[p]etitioner has failed to make a persuasive showing of actual innocence . . . . the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence."[48]  Nor, for that matter, has the Second Circuit recognized innocence as a freestanding claim.  Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, it is necessary to apply the appropriate standard to the evidence.

In the context of overcoming a procedural default, a federal habeas petitioner must demonstrate that the constitutional violations he alleges "ha[ve] probably resulted in the conviction of one who is actually innocent," such that a federal court's refusal to hear the defaulted claims would be a "miscarriage of justice."[49]  It is important to note that, in this

---

[45] *Tucker*, 834 N.Y.S.2d at 593-94.

[46] *Schlup v. Delo,* 513 U.S. 298, 326, 327 (1995); *Herrera*, 506 U.S. at 400.

[47] *See House v. Bell*, 547 U.S. 518, 554–55 (2006); *District Attorney's Office for Third Judicial District v. Osborne.*, 557 U.S. ---, 129 S. Ct. 2308, 2321 (2009).

[48] *Herrera*, 506 U.S. at 427 (O'Connor, J. concurring).

[49] *Schlup,* 513 U.S. at 326, 327 (internal quotation marks omitted).

context, "'actual innocence' means factual innocence, not mere legal insufficiency."[50]  To make

the requisite showing of actual innocence, Tucker must produce "new *reliable*

evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence—that was not presented at trial" and "must show that it is more likely

than not that no reasonable juror would have convicted him in the light of the new evidence."[51]

"It is axiomatic that witness recantations 'must be looked upon with the utmost

suspicion.'"[52]  This rule exists because recantations upset society's interest in the finality of

convictions, are very often unreliable and given for suspect reasons, and, as in this case, merely

to impeach cumulative evidence rather than to undermine confidence in the accuracy of the

conviction.[53]  The Second Circuit has recognized "that due process is violated if a state leaves in

place a criminal conviction after a credible recantation of material testimony and the recantation

would 'most likely' have changed the outcome."[54]  In this case, as the Appellate Division found,

the only testimony that Tucker asserts Williams recanted was his testimony denying the existence

of a cooperation agreement.  As the Appellate Division noted, while the recantation had

impeachment value, it was not material.  Because it was not material, it could not have affected

the outcome.

---

[50] *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

[51] *Schlup*, 513 U.S. at 324, 327 (emphasis added).

[52] *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) (quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2003)); *see Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984) (Mem.) (Brennan, J., dissenting from the denial of *certiorari*).

[53] *Haouari*, 510 F.3d at 353 (citing *Dobbert*).

[54] *Quezada v. Smith*, 624 F.3d 514, 521 (2d Cir. 2010) (citing *Sanders v. Sullivan*, 863 F.2d 218, 222 (2d Cir. 1988)).

In the context of the hypothetical freestanding, actual innocence claim, the Supreme Court has described the threshold as "extraordinarily high."[55] "The sequence of the Court's decisions in *Herrera* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*."[56] Measured against either standard, sufficiency to overcome a procedural bar or as a freestanding claim, Tucker has fallen far short of establishing his actual innocence.

Because Tucker failed to file his Petition in this Court timely and has failed to establish his actual innocence, this Court need not reach the other issues raised by Tucker in his Petition for relief.

## V.  ORDER

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[57] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[58]

---

[55] *Herrera*, 506 U.S. at 417.

[56] *House*, 547 U.S. at 555.

[57] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[58] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court is to enter final judgment accordingly.

Dated:  March 8, 2011.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.

United States District Judge
